## OSBORN, EX PARTE.

Where there does not appear to be manifest error in the circuit court in refusing bail in a criminal case, this court will not grant it.

*Petition for Habeas Corpus to admit to bail.*

GALLAGHER & NEWTON, for petitioner.

An indictment for a capital offence does not raise a presumption of guilt against the prisoner so strong as not to be rebutted by him; and upon an application to be admitted to bail, the court may go behind the indictment. *White, ex parte,* 4 *Eng.,* 222.

The only capital homicide is murder in the first degree; which is a willful, deliberate, malicious and pre-meditated killing; and the proof of such a killing must be evident or the presumption great; otherwise the prisoner has the right to be let to bail. *Sec.* 16 *bill of rights; sec.* 7, *ch.* 51 *Gould's Dig.* And it is submitted that the facts in this case do not show such a killing as should constrain this court to refuse the application.

The principles decided in *Pitman vs. State,* 22d *Ark.,* a case more outrageous than this, though resembling it in some particulars, are referred to.

The rule laid down in *Good et al. ex parte,* 19 *Ark.,* and *Jones ex parte,* 20 *Ark.,* for reviewing the decision of the circuit court in refusing bail, has been strictly followed in this case.

JORDAN, Attorney General, contra.

Mr. Justice HARPER delivered the opinion of the court.

This is an application to review the decision of the circuit court of Saline county at the March term 1866, refusing to grant the petitioner bail. The case is exhibited here by a duly certified transcript of the record which contains the whole case including

the indictment for murder in the first degree, with the evidence adduced on the motion for bail, and the opinion of the court overruling said motion. The petitioner also alleges that the judge of said circuit court of Saline county is now absent from the state, as petitioner is advised and believes, to remain absent several months.

The case of *Good et al., ex parte*, 19 *Ark.*, *page* 410, is referred to by petitioner in support of his application to review the decision below and grant him bail. In that case it is held that, if upon the hearing of an application for bail, the circuit court or judge refuse to admit the prisoner to bail, upon a proper application to this court, and showing of the facts on which the judge acted, if the showing be deemed sufficient, a certiorari would be awarded to bring up a transcript of the papers and proceedings upon the application for bail, for revision, and if it was determined that the prisoner was entitled to bail, this court might bring him before it by *habeas corpus*, and admit him to bail, or if deemed more convenient, direct the circuit judge by the proper mandate to do so. Regarding this decision as fully sustaining the authority of this court to review the decision of the court below in this case, and to grant bail if there is manifest error, the question for this court to determine is, is there manifest error in the decision of the court below overruling the application for bail.

The offence charged is murder in the first degree, which is not bailable. It is claimed in the petition that the facts do not show that the prisoner had pre-meditated the killing when he went to the house of deceased with his gun; but that the killing was more probably from a sudden determination formed after his arrival there, and brought on by the unfortunate and untimely interference of the wife of the deceased, and that the offence charged can only amount to murder in the second degree at most and therefore bailable.

The case is substantially this. The petitioner, George Osborn is charged with the murder of Joseph Price, on the 7th day of March, 1866, in the county of Saline. They had had a difficulty

of not many days standing. The deceased had accused prisoner of stealing his meat, and with extremely rough language, had declared that he, the deceased, would kill the prisoner before sun-down of the very day on which it turned out that he himself was killed by the prisoner, or before the next morning, saying that prisoner had stolen enough of the deceased's lard to grease his way to hell. One of the witnesses was so impressed with the earnestness of these threats that she even deceived the deceased as to where prisoner then was, giving as a reason for that deception, that she feared the deceased would slip around and kill the prisoner (the petitioner here) before she could put him on his guard. She testifies, however, that she found the prisoner and informed him of these threats by deceased. It is in proof that deceased was fully armed and making visible demonstrations to carry his threats into execution. The prisoner, with full knowledge of these threats and demonstrations, prepares himself with a gun and goes to the house of the deceased, instead of remaining away like one determined to act only on the defensive. He went there too, about sun-down of the day on which, according to the threats, his own life was to terminate. He goes directly to the door of the house in which deceased was sitting down, with his gun in hand raised as if to fire, and says: " Joe, this is the time." Deceased says: " what did you say, George," at the same time rising and advancing towards the prisoner, his pistol being on a table in the room, and gun in rack over the door— the wife of the deceased immediately interposing and getting hold of the gun in the hands of the prisoner : prisoner says: " got out of the way Esther, or I will put this load in you ;" and only delaying the shot long enough to push aside the woman, fired the fatal shot. Deceased fell on the fire and expired in a few minutes.

The question is, what did prisoner go to the house of the deceased for? Was it, or was it not to kill the deceased ? The question is not whether prisoner thought that, under the law and facts, he would be justified in killing deceased ; but whether,

according to the evidence, he went to the house of the deceased on that day determined to kill him.

It is contended that the facts warrant the conclusion that the determination on part of petitioner was only, under a demonstration of arms, to bring about an adjustment, and that the determination to kill was only formed after his arrival there, and precipitated by the foolish and inopportune conduct of the wife of deceased; and that, therefore, the case could only be murder in the second degree and bailable.

The court below thought otherwise and this court is called upon, from the facts stated, to say there is manifest error in the ruling of the court below in refusing bail.

The counsel for petitioner refers, also, to the case of *Pitman vs. The State*, 22d *Ark.*, 364, as a case furnishing authority for the hypothesis that this case is one in which the court below should have granted bail. A close examination shows a very marked difference in the two cases. These threats were mutual, and each party had been seeking the other with deadly weapons, and when Thompson, the deceased in that case, was fired upon by Pitman, he was himself advancing with a double-barrel gun towards Pitman, and as he halted some 40 yards from Pitman, received the fatal shot from Pitman's gun. The cases, then, are entirely dissimilar.

This court, on a careful examination of all the testimony in this case, cannot say that there was manifest error in the court below in refusing bail to petitioner. The motion for habeas corpus is therefore overruled.